IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL J. LAFFEY,<br><br>     *Plaintiff,*<br><br>v.<br><br>LEAH ANN WILDER *also known as* LEAH ANN LAFFEY,<br><br>     *Defendant.* | Civil Action No. 2:22-cv-210<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

At its core, this is a family law matter concerning divorce proceedings pending in the Family Division of the Allegheny County Court of Common Pleas (the Fifth Judicial District of Pennsylvania) at Case No. FD-13-006890. Much of Plaintiff's Complaint is devoted to wrongs perpetrated against him by Defendant, his soon to be ex-wife, as to corporations they own. He accuses her of fraud and embezzlement. Upon review of Plaintiff's submissions, it is clear that he seeks to have the Court intervene in an ongoing divorce dispute. The Court declines to do so. For the following reasons, it will grant Defendant's Motion to Dismiss (ECF No. 4).

      I.  S<small>TANDARD</small> O<small>F</small> R<small>EVIEW</small>

 A. *Pro Se* **Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S.

375, 386 (2003) (Scalia, J., concurring). If a court can reasonably read the pleadings to state a valid claim on which a plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364, 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969). Here, the Court is aware of the fact that Plaintiff in a licensed Pennsylvania attorney with active status. *See https://www.padisciplinaryboard.org/for-the-public/find-attorney/attorney-detail/47246* (last accessed 05/12/2022). Notwithstanding the fact that Plaintiff is an attorney and he should be able to adhere to formal pleading standards, the Federal Rules of Civil Procedure, and the local rules, the Court will apply the less stringent standards afforded to *pro se* plaintiffs and construe his filings liberally.

  **B.**  **Rule 12 Motions**

"When a motion to dismiss is based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b) defenses, the Court should consider the Rule 12(b)(1) challenge first because, if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses become moot and need not be addressed." *Wyeth and Cordis Corp. v. Abbot Labs.*, Civil Action No. 08–0230, 2008 WL 2036805, at *2 (D.N.J. May 8, 2008) (citation omitted); *see also Tagayun v. Lever & Stolzenberg*, 239 F. App'x 708, 710 (3d Cir. 2007) ("An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case.") (citation omitted); *McCurdy v. Esmonde*, Civil Action No. 02-4614, 2003 WL 223412, at *4 (E.D. Pa. Jan. 30, 2003) ("Without jurisdiction the court cannot proceed at all in any cause.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)).

i.   **Rule 12(b)(1)**

Under Rule 12(b)(1), a court must grant a motion to dismiss if there is a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is the Court's authority to hear a case. If a case, as presented by a plaintiff, does not meet the requirements of subject matter jurisdiction or if it is otherwise barred by law, then the Court must dismiss the case. A plaintiff bears the burden of persuasion that federal jurisdiction is present. *Saint Vincent Health Ctr. v. Shalala*, 937 F. Supp. 496, 501 (W.D. Pa. 1995) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

The defendant can challenge whether a plaintiff has done so, through either a facial challenge or a factual challenge to the complaint. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). In a facial challenge, a court looks to the face of the complaint and accepts as true the facts alleged by the plaintiff. *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). If a court cannot conclude, based on the face of the complaint, that jurisdictional requirements are met, then it must dismiss the complaint. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 633 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, a facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)." *Constitution Party of PA v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Thus, "'[t]hreadbare recitals of the elements of [jurisdiction], supported by mere conclusory statements, do not suffice.'" *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 633 (quoting *Iqbal*, 556 U.S. at 678).

In a factual challenge, however, a plaintiff's factual allegations are not presumed to be true, and a court "is free to weigh the evidence and satisfy itself as to the existence of its power

to hear the case." *Hartig Drug Co.*, 836 F.3d at 268.  A factual challenge may only be raised after an answer has been filed.  *Long v. SEPTA*, 903 F.3d 312, 320 (3d Cir. 2018).

Thus, any motion to dismiss for lack of subject matter jurisdiction filed prior to an answer is, by default, a facial challenge.  *Id.*  That is the case with Defendant's challenge herein.

      ii.      **Rule 12(b)(6)**

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Iqbal*, 556 U.S. at 678.  A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008).  Although a court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation."  *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility."  *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556).  In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact.  *Twombly*, 550 U.S. at 555.  Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.  Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not

entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

Here, the relevant facts are included in the exhibits, public records, and the Complaint, all of which properly may be considered. Accordingly, the Court will apply the Rule 12(b)(6) standard to the merits of the motion to dismiss as the distinction between the Rule 12(b)(1) or Rule 12(b)(6) standard is not significant to the Court's resolution of the motion. *See Carsten v. Boylan*, Civil Action No. 3:17-cv-00733, 2018 WL 1696649, at *2-3 (M.D. Pa. Apr. 6, 2018).

## II.  PERTINENT FACTS

Plaintiff and Defendant, as a married couple, formed Laffey Healthcare Services, a Personal Care Home in 2010. (ECF No. 1, p. 4). They separated in January of 2013. In April of 2013, Defendant filed a Complaint in Divorce in the Family Division of the Court of Common Pleas of Allegheny County that is docketed at Case No. FD-13-006890. (ECF No. 5, p. 3). A conciliation hearing was conducted on March 24, 2022. The case has been bifurcated, and the equitable distribution hearings will occur in July of this year. (ECF No. 5, p. 3). On May 5, 2022, the parties filed their Marital Asset and Liability Summary. *See https://dcr.alleghenycounty.us/Civil/View/PublicSearchByCaseNumber.aspx?CasID=FD-13-006890* (last accessed 05/12/2022). [1]

At Defendant's request in 2015 and again in 2017, Plaintiff and Defendant entered into two separate post-separation property agreements to allow Laffey Healthcare Services to purchase additional investments "using existing corporate revenue and a pledge of the parties['] joint marital assets as well as personal guarantees of Plaintiff to support expansion of their corporate investment activities." (ECF No. 1, p. 4; ECF No. 10-1, pp. 12, 14; ECF No. 11, pp. 10-11). Both post-separation agreements stated that everything was to be "considered marital property" and was "to be treated as if they were acquired prior to the filing of the divorce and separation proceedings." (ECF No. 10-1, pp. 12, 14; ECF No. 11, pp. 10-11). Laffey Healthcare Services purchased Molinaro Manor, a personal care home, in 2015 for $850,000.00 "secured by

---

[1] The Court may consider matters of which it may take judicial notice including matters of public record, like the public docket sheets. *See Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("[D]ocket sheets are public records[ ] of which this court may take judicial notice in deciding a motion to dismiss." (*citing Pension Ben. Guar. Corp.*, 998 F.2d at 1197 (defining public record to include criminal case dispositions, such as convictions or mistrials)).

the parties['] joint corporation, marital residence and all other personal assets." It also purchased another personal care home, Carriage Manor, in 2017 for $1,100,000.00. (ECF No. 1, p. 4).

According to Plaintiff, "Defendant has subsequently misrepresented the financial status of the corporations, engaged in self[-]dealing and has refused to make any distributions to plaintiff and refuses to allow plaintiff access to the corporate books and records." (ECF No. 1, p. 4). He alleges that Defendant "has always represented to Plaintiff that the PCH companies never made any profit, as such Plaintiff from 2017 thru 2020 made in excess of 17 separate loans to the joint companies managed by the Defendant (totaling $116,590) which were repaid, but at the same time, undisclosed to Plaintiff, Defendant issued to herself distributions totaling over $1,129,376." (ECF No. 1, p. 5). Furthermore, Plaintiff alleges that Defendant has failed to issue any distributions to him, but that "[i]n 2020 Defendant paid herself a salary of at least $86,770 and in 2019 Defendant reported distribution from the joint companies of $235,354 Plaintiff at the same time was told by Defendant the companies were failing and made short term payroll loans to the various companies in 2019 of $35,500." (*Id.*, p. 5). He contends that Defendant has total control of the joint partnership assets and has refused access to corporate records or accounts. (*Id.*). He avers that one of the corporations defaulted on its SBA loan and another corporation defaulted on the purchase money loan and Plaintiff was forced to pay "a $41,950 asset purchase money debt. (*Id.*, p. 5). Plaintiff also accuses Defendant of failing "to properly make payments for Payroll, liability insurance and other insurances in violation of prudent corporate management and state and federal laws." (*Id.*).

Plaintiff seeks the following relief:

>   1.   Plaintiff seeks judgment in the amount of $564,688 (50% of $1,129,376.00 in distributions taken by plaintiff from the jointly owned corporations. (per defendant's 2013-2020 tax returns) plus equal payment of any other distributions taken by the Defendant.

7

      2.      Plaintiff asks for an accounting of all expenses paid by the jointly owned corporations since inception.

      3.      Plaintiff believes defendant has embezzled from the joint corporations using corporate assets for personal expenses.

      5.      Plaintiff has failed to properly manage the joint assets (for which she was paid a salary of $86,770 in 2020) and has failed to make proper payroll payments, maintain required insurances to protect the corporations and Plaintiff from personal liability.

      6.      Plaintiff seeks to have a trustee appointed to oversee the operation and liquidate the various corporations which the defendant controls and in which the plaintiff has a 50% interest.

(ECF No. 1, p. 6).

Defendant brings to the Court's attention that the assets and corporations mentioned in the post-separation agreements were claimed by Plaintiff in the divorce proceedings as marital assets, and that Plaintiff has hired an expert to value the corporations. (ECF No. 11, pp. 2, 12-36). Additionally, Defendant notes that while Plaintiff is alleging fraud and embezzlement as to the assets and corporations covered by the post-separation agreements, in the divorce proceedings, he is alleging that Plaintiff dissipated marital assets by taking the alleged distributions such that he is entitled to the distributions as marital property. (ECF No. 11, p. 2).

### III. ANALYSIS

Federal courts are courts of limited jurisdiction. *See, e.g., Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). Because the propriety of subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977). Plaintiff states that he is proceeding under diversity of citizenship, 18 U.S.C. § 1332. (ECF No 1, p. 3; ECF No. 10, pp. 2-3). A district court has jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a). Plaintiff resides in

Pennsylvania, and Defendant resides in West Virginia. (ECF No. 1, pp. 3-4). Thus, there is diversity of citizenship. Plaintiff also contends that Defendant owes him "$564,688 (50% of corporate dividends Defendant has distributed to herself since 2015)" and "50% of the value of 2 corporations purchased in 2015 and 2017 at a cost of $850,000 and $1,1m respectively." (*Id.*, p. 4). Thus, the amount is dispute is over $75,000. It appears from the face of the Complaint that Plaintiff has adequately asserted federal subject matter jurisdiction. Nevertheless, the Court will not exercise that jurisdiction for the following reasons.

### A. The Domestic-Relations Exception applies.

The United States Supreme Court expressly "disclaim[ed] any jurisdiction in the courts of the United States upon the subject of divorce, or the allowance of alimony." *Barber v. Barber*, 62 U.S. 582, 584 (1858). The exception was later extended to "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593-94 (1890). More recently, the Supreme Court articulated that the exception "divest[s] the federal courts of the power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). *See also Matusow v. Trans-County Title Agency, LLC*, 545 F.3d 241, 245 (3d Cir. 2008) ("The Supreme Court has long recognized a domestic relations exception to federal diversity jurisdiction." (citation omitted)). Plaintiff's Complaint falls squarely within the domestic-relations exception.

Plaintiff brings claims under Pennsylvania state law seeking to invoke the Court's federal diversity jurisdiction. He believes he can seek relief from the Court because he has not alleged fraud or embezzlement by Defendant in his state divorce case. He argues that this case is "solely for the return of investment income and capital stolen by the Defendant without Plaintiff's

knowledge." (ECF No. 10, p. 2). Plaintiff states, "Plaintiff is not requesting this Court determine the ultimate ownership percentages of the subject Corporations which may be determined by a domestic relations court. Plaintiff is requesting the court enforce the post nuptial agreements agreed to by the parties which under Pennsylvania law are contracts not subject to amendment by equitable distribution under Pennsylvania law." (*Id.*, p. 3). The Court will do no such thing.

This case clearly involves a dispute as to post-separation agreements, which purported to determine the rights and obligations to marital property – corporations. But, the state court is already determining the ownership of marital property, as well as determining what each party is entitled to as a result of the post-separation agreements. By way of this action, Plaintiff seeks in part to alter any future determination by the state court as to what constitutes martial property. Plaintiff believes Defendant misappropriated funds from the corporations to reduce marital assets, including those covered by the post-separation agreement. "While it is true that the action[ ] as pled sound[s] in contract and fraud, it is nonetheless plain that ... the action[ ] must be interpreted against the background of extreme acrimony emanating from the parties' marital dispute and extreme infighting over their property rights." *Allen v. Allen*, 518 F.Supp. 1234, 1237 (E.D. Pa. July 27, 1981).

The Court concludes that the matter before it is a domestic relations dispute. Plaintiff is fearful of not receiving adequate remuneration in state court for Defendant's alleged behavior. He admits that he "would hope that the Pennsylvania Divorce Court would take notice of the over $1,000,000 in marital assets embezzled by the Defendant as diminution of Marital assets, However Plaintiff believes that the Divorce Court will only address equitable distribution of Marital property not already agreed to in the valid post separation agreement. Therefore,

Plaintiff believes that Jurisdiction in Federal Court is not only proper but is Plaintiff's exclusive avenue for restitution of the embezzlement and mismanagement issues." (ECF No 10-1, p. 7).

Fairly construed, Plaintiff's Complaint seeks adjudication of matters that are implicated in the pending state divorce case. The Court declines his invitation to circumvent the state court divorce proceedings.[2] The domestic-relations doctrine forbids federal court adjudication of state domestic relations matters. The policies underlying the doctrine fully apply here and caution against federal intervention. The Court will dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) as it lacks subject matter jurisdiction.

### B. *Younger* Abstention

Plaintiff's Complaint, which essentially invites the Court to intervene in a pending state divorce case, runs afoul of another settled tenet of federal law, the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* abstention doctrine counsels against a federal court exercising jurisdiction over a matter seeking review of a pending state court proceeding. Three requirements must be met before *Younger* abstention is appropriate: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. *Marran v. Marran*, 376 F.3d 143, 154 (3d Cir. 2004) (citations omitted).

---

[2] In January of 2022, Plaintiff filed a Complaint in Confession of Judgment against Defendant in the Civil Division of the Allegheny County Court of Common Pleas at Case No. GD-22-001018 with regard to the promissory note relative to the purchase of Carriage Manor in 2017. Defendant filed a motion to transfer the matter to the family division divorce case, and the Honorable John T. McVay, Jr. did so on February 16, 2022. *See https://dcr.alleghenycounty.us/Civil/View/PublicSearchByCaseNumber.aspx?CasID=GD-22-001018* (last accessed 05/12/2022). It is apparent that Case No. GD-22-001018 was an attempt by Plaintiff to cast marital assets outside of the divorce action. That is exactly what Plaintiff is again attempting to do before the Court.

The first two prongs are clearly met. No final divorce decree has been issued for the parties. The state court proceedings on equitable distribution have yet to occur. The parties' pending state court divorce case is precisely the type of proceeding that implicates important interests of the state. The United States Court of Appeals for the Third Circuit has recognized that state courts have a special expertise and experience with the field of domestic relations, while federal courts have no general jurisdiction over such matters. *Lazaridis v. Wehmer*, 591 F.3d 666, 671 (3d Cir. 2010) (citation omitted), *abrogated on other grounds by Vuyanich v. Smithton Borough*, 5 F.4th 379, 388-89 (3d Cir. 2021). For the Court to interfere in a divorce dispute would disturb an important state interest.

With regard to the third element of the *Younger* abstention doctrine, there is no indication that Plaintiff does not have the ability to challenge the decisions of the state court presiding over his divorce case, or to advance his claims. No economic distribution scheme has been ordered in state court. The burden rests on Plaintiff to show that state procedural law bars presentation of his claims. *Lazaridis*, 591 F.3d at 670–71 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14–15 (1987)). He has failed to meet this burden. In fact, despite Plaintiff's attempt to argue otherwise, the decision on whether the post-separation agreements will cause some property acquired by Defendant after their separation to become marital property, is a matter best left for the state court. It may accept all, part, or none of the evidence regarding valuation of marital property, and it may rely on its own valuation method since the Pennsylvania Divorce Code does not specify an asset valuation method. *Verholek v. Verholek*, 741 A.2d 792, 796 (Pa. Super. 1999), *appeal denied*, 759 A.2d 388 (Pa. 2000). The goal of the state court in deciding equitable distribution is to achieve economic justice between the parties. Should Plaintiff disagree with the state court's equitable distribution scheme, he can appeal to the Pennsylvania Superior Court,

which will review the equitable distribution scheme for an abuse of discretion. *Brubaker v. Brubaker*, 201 A.3d 180, 184 (Pa. Super. 2018) (citation omitted).

Accordingly, the Court also finds *Younger* abstention is appropriate. Plaintiff is unquestionably seeking relief with respect to ongoing state court divorce proceedings.

### IV.   CONCLUSION

Plaintiff's state court divorce case may not be progressing as he wishes. He seeks the Court's intervention to provide him what he believes to be just compensation. Yet, Plaintiff has every opportunity to seek relief in the state court equitable distribution proceedings and to pursue appellate review in state courts of any adverse rulings. It is in that forum and through that process that Plaintiff's claims may be heard. The Court lacks jurisdiction to intervene. Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) will be granted. Plaintiff's Complaint will be dismissed without prejudice for want of subject matter jurisdiction. Consequently, Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is rendered moot. A separate order will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated:   5-12-22